UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
WILSON PAGAN,

                 Petitioner,

           -against-

UNITED STATES OF AMERICA,

                 Respondent.

-----------------------------------------------------x

ORDER

10-CR-392-1 (CS)
24-CV-4095 (CS)

Appearances:

Wilson Pagan
Jonesville, Virginia
*Petitioner* Pro Se

Michael Maimin
Assistant United States Attorney
New York, New York
*Attorney for the United States*

Seibel, J.

      Before the Court is Wilson Pagan's petition pursuant to 28 U.S.C. § 2255, (ECF Nos.

1344, 1349), the Government's opposition thereto, (ECF No. 1355), and Petitioner's reply, (ECF

No. 1360).[1]   For the reasons stated below, the Petition is denied.

I.     Background

      The Court assumes the parties' familiarity with the record in and the procedural history of

the underlying criminal case, as well as the standards governing motions under § 2255, and sets

forth only those facts relevant to its decision.   In 2013 Petitioner was convicted after trial of

multiple counts of racketeering, violent crimes (including murder) in aid of racketeering, and

---

[1] All docket references are to No. 10-CR-392.

firearms offenses in connection with his leadership of the Newburgh Latin Kings.   On

November 26, 2013, he was sentenced principally to life imprisonment plus 85 years.   (ECF No.

814.)   Four concurrent life sentences resulted from his convictions for racketeering, racketeering

conspiracy, murder in aid of racketeering and narcotics conspiracy, and the consecutive 85 years

resulted from three convictions under 18 U.S.C. § 924(c) for the discharge of a firearm and one

under 18 U.S.C. § 924(j) for the discharge of a firearm resulting in death.[2]   On appeal, Petitioner

argued, among other things, that the jury was erroneously instructed that it could find him guilty

of violent crimes in aid of racketeering based on a *Pinkerton* theory – that is, based on the

foreseeable acts of conspirators in furtherance of the conspiracy.   *See Pinkerton v. United States*,

328 U.S. 640, 646-48 (1946).   The Second Circuit held that the claim was "foreclosed" by

*United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999), which "remains controlling authority," and

thus that the *Pinkerton* instruction was not plain error.   *See United States v. Sanchez*, 623 F.

App'x 35, 39 (2d Cir. 2015).

In 2017 Petitioner filed his first § 2255 petition, alleging ineffective assistance of counsel

("IAC") and that certain convictions under 18 U.S.C. § 924(c) had to be vacated because a

portion of that statute was void for vagueness.   (ECF No. 1019.)   The Court rejected the IAC

claims and held the 924(c) claims in abeyance pending the Supreme Court's consideration of the

issue.   (ECF No. 1080.)   Following the decision in *United States v. Davis*, 558 U.S. 445 (2019),

the Court vacated two § 924(c) counts but upheld the § 924(j) count.   (ECF No. 1289.)   That

resulted in the sentence of imprisonment being reduced from life-plus-85-years to life-plus-35-

---

[2] The § 924(c) discharges were in furtherance of the narcotics conspiracy, the racketeering conspiracy and a November 1, 2008 altercation with the Bloods.   The § 924(j) discharge was in furtherance of the murder of Jeffrey Zachary.   The life sentence for the conviction for murder in aid of racketeering was mandatory.   The sentences for the counts other than those mentioned were concurrent with the life sentences.

years.   (ECF Nos. 1292, 1295.)   The Second Circuit denied a certificate of appealability.   (ECF

No. 1320.)

Petitioner has now filed a second § 2255 petition, but it is not considered a second or

successive petition because it is his first petition following the amended judgment.   *Marmolejos*

*v. United States*, 789 F.3d 66, 70 (2d Cir 2015); *see Magwood v. Patterson*, 561 U.S. 320, 340

(2010).   The Government argues that his claims are procedurally that defaulted because they

could have been raised in his first petition, but the Second Circuit has "found that [a] petitioner

[is] not barred from challenging his original . . . convictions in the subsequently filed petition,

even though those convictions and sentences were left undisturbed when the court entered an

amended judgment at the conclusion of his first round of habeas litigation."   *Chambers v. Lilly*,

735 F. Supp. 3d 196, 223 (E.D.N.Y. 2024) (citing *Johnson v. United States*, 623 F.3d 41, 46 (2d

Cir. 2010).[3]   I therefore turn to the merits.

II.    Discussion

A.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must affirmatively show that

"1) counsel's performance fell below an objective standard of reasonableness according to

prevailing professional norms, and 2) it is reasonably likely that prejudice occurred – *i.e.*, that

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland v. Washington*, 466

U.S. 668, 687-96 (1984)).[4]

---

[3] Nor is review of an ineffective assistance claim precluded merely because the Court of Appeals found no plain error in the jury instruction to which counsel failed to object.   *See Soler v. United States*, No. 05-CR-165, 2015 WL 4879170, at *21 (S.D.N.Y. Aug. 14, 2015).

[4] Unless otherwise indicated, all case quotations omit internal quotation marks, citations, alterations and footnotes.

When evaluating counsel's performance under the first prong of the test, a reviewing court applies a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.

> Judicial scrutiny of counsel's performance must be highly deferential.   It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.   A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.   Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.   There are countless ways to provide effective assistance in any given case.   Even the best criminal defense attorneys would not defend a particular client in the same way.

*Strickland*, 466 U.S. at 689.

Under *Strickland*'s second prong, the reviewing court must determine "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different."  *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994). This analysis requires more than "mere outcome determination," but also mandates "attention to whether the result of the proceeding was fundamentally unfair or unreliable."  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).   Prejudice cannot be shown "if the claim or objection that an attorney failed to pursue lacks merit."  *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012).

"[T]he *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial

inquiry threaten the integrity of the very adversary process the right to counsel is meant to

serve."   *Harrington v. Richter*, 562 U.S. 86, 105 (2011).   Petitioner bears the burden of

establishing both constitutionally deficient performance and prejudice.   *United States v. Birkin*,

366 F.3d 95, 100 (2d Cir. 2004).

Petitioner argues that his counsel were ineffective for failing to: 1) object to the *Pinkerton*

instruction as it relates to the violent crime in aid of racketeering ("VICAR") counts; 2) call

exculpatory witnesses or introduce their statements into evidence; and 3) protect his rights under

the confrontation clause.   He does not provide any explanation as to the third allegation, and

because I am unable to discern the basis for the claim, I do not discuss it further.[5]

B.      *Pinkerton* Instruction

As to the failure to object to the *Pinkerton* instruction:

> A petitioner faces an especially heavy burden in attempting to
> prove prejudice on the basis of an allegedly erroneous jury
> instruction.   A petitioner must show that the instruction was
> erroneous and must also show that there was a reasonable
> likelihood that the jury applied the instruction in a way that
> relieved the State of its burden of proving every element of the
> crime beyond a reasonable doubt.   The pertinent question is
> whether the ailing instruction by itself so infected the entire trial
> that the resulting conviction violates due process.   In answering
> that question, the allegedly erroneous instruction must not be
> judged in isolation, but must be considered in the context of the
> instructions as a whole.   A trial counsel's failure to object to
> legally correct jury instructions does not constitute ineffective
> assistance.

---

[5] Neither Petitioner's opening brief, (ECF No. 1349 and also attached as pages 13-21 of Petitioner's reply brief), nor his reply brief, (ECF No. 1360), refer to the confrontation claim. The Government somehow overlooked Petitioner's opening brief (which was erroneously docketed as a "Reply Memorandum of Law" but was plainly filed before the Court ordered the Government to answer the Petition), and because the Government was of the belief that Petitioner had not filed a brief, (*see* ECF No. 1355 at 4, 5), its submission was not particularly helpful.

*Bogan v. Bradt*, No. 11-CV-1550, 2017 WL 2913465, at *10 (E.D.N.Y. July 6, 2017).[6]

Here the instruction to which counsel did not object was based on a case that "remains controlling authority."   *United States v. Osborne*, 739 F. App'x 11, 16 (2d Cir. 2018) (noting "*Diaz*'s broad language and continued applicability" despite concerns about its viability); *Sanchez*, 623 F. App'x at 39 (despite concerns, Second Circuit "has not expressly disavowed *Diaz*'s broad language, much less reversed its holding").   "[C]ounsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained clear and previously identified errors."   *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001).   It is hard to see how an instruction based on authority that "remains controlling" can amount to a "clear and previously identified error."   That "counsel did not object to a charge that was legally correct . . . does not fall below the objective standard of reasonableness as is required to prove that his counsel was constitutionally ineffective."   *Naranjo v. United States*, No. 13-CR-351, 2019 WL 7568186, at *6 (S.D.N.Y. Dec. 16, 2019), *report and recommendation adopted*, 2020 WL 174072 (S.D.N.Y. Jan. 13, 2020).

Even if *Diaz* had been overruled by the Second Circuit subsequent to trial, counsel's failure to predict that action would not amount to substandard performance.   "[A]n attorney is not required to forecast changes or advances in the law in order to provide effective assistance. Rather counsel's performance must be assessed as of the time of counsel's conduct without the benefit of hindsight."   *McCoy v. United States*, 707 F.3d 184, 188 (2d Cir. 2013); *see United States v. De La Pava*, 268 F.3d 157, 166 (2d Cir. 2001) (attorney not ineffective for failing to make motion where no circuit had held such a motion to be valid); *Lilly v. Gilmore*, 988 F.2d

---

[6] The Court will send Petitioner copies of any unreported cases cited in this Order.

783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require counsel to forecast changes or

advances in the law."); *Pena v. United States*, No. 00-CR-36, 2005 WL 1176073, at *6

(S.D.N.Y. May 18, 2005) ("[C]ounsel is not ineffective for failing to forecast a change in the

law.") (collecting cases), *aff'd*, 534 F.3d 92 (2d Cir. 2008).   "Legal forecasting is not required of

defense counsel because '[t]he proper measure of attorney performance remains simply

reasonableness under prevailing professional norms.'"   *Hancock v. United States*, No. 14-CV-

1751, 2019 WL 418093, at *9 (D. Conn. Feb. 1, 2019) (quoting *Strickland*, 466 U.S.at 688).

Given that *Diaz* has not been overruled to date, the argument for substandard performance is

even less viable.

        Nor has Petitioner shown prejudice.   He makes no effort to demonstrate a reasonable

probability of acquittal absent the *Pinkerton* instruction.   In light of the substantial evidence that

the violence of which he was convicted was authorized and even ordered by him, (*see United

States v. Sanchez*, No. 13-3979, ECF No. 171 at 3-11 (Second Circuit Apr. 13, 2015)), as

opposed to merely foreseeable, he cannot make the required showing under the second prong of

the *Strickland* test.   In short, "[e]ven assuming that his counsel's non-objection was an

unprofessional error, [Petitioner] has not demonstrated that it so upset the adversarial balance

between defense and prosecution that the trial was rendered unfair and the verdict rendered

suspect."   *Naranjo*, 2019 WL 7568186, at *7.

        C.    Witnesses

        Petitioner was convicted of several charges relating to the murder of Jeffrey Zachary.

The evidence at trial was that Petitioner authorized the shooting of a Bloods member named

"Bless," but the aspiring Latin Kings who went on the mission – Daniel Correa and Josh Torres –

killed Zachary mistake.   Correa was tried and convicted for that murder in state court, and

Torres testified at Correa's trial.   Petitioner argues that while those individuals were unavailable

to testify at his trial, his counsel were ineffective for failing to call as witnesses prosecutors from

the state murder trial who could have testified about what Correa and Torres had said in their

state-court testimony.   He represents that Torres testified that he was driving with Correa when

Correa began shooting from the back seat.   He further represents that Correa testified that he had

seen Petitioner around the neighborhood but did not know him beyond that.   (ECF No. 1349 at

6.)

While the unjustified failure to call a credible alibi witness cannot be considered

sound trial strategy, *Pavel v. Hollins*, 261 F.3d 210, 217-23 (2d Cir. 2001), "the tactical decision

of whether to call specific witnesses – even ones that might offer exculpatory evidence – is

ordinarily not viewed as a lapse in professional representation," *United States v. Schmidt*, 105

F.3d 82, 90 (2d Cir. 1997).   Rather, "[t]he decision of whether to call or bypass a particular

witness is a question of trial strategy which courts will practically never second-guess." *Ozuru*

*v. United States*, No. 95-CV-2241, 1997 WL 124212, at *4 (E.D.N.Y. Mar. 11, 1997), *aff'd*, 152

F.3d 920 (2d Cir. 1998).

The record here presents no reason to depart from the principle that reviewing courts

ought to be "especially deferential to defense attorneys' decisions concerning which witnesses to

put before the jury."   *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005).   Petitioner describes

nothing in Torres' testimony that would have been helpful to him, and while Correa's testimony

might arguably have been helpful if believed,[7] the jury in state court apparently did not believe

---

[7] Even if Correa really only knew Petitioner from "around the neighborhood," that would not preclude his knowledge of Petitioner's position and activities as leader of the Latin Kings, so Correa's testimony might well have been dangerous for Petitioner.   And if Correa denied knowing Petitioner's position, that testimony would have been disbelieved in light of the overwhelming evidence at trial as to Petitioner's position as "First Crown."

Correa, having convicted him of murder, and there is no indication he would have fared any better before Petitioner's jury.   More fundamentally, Petitioner concedes that neither Torres nor Correa was available and that his counsel would have had to introduce their testimony through the state prosecutors.   But that testimony would have been inadmissible as hearsay, and he posits no exception to the hearsay rule that would have applied.

Thus, that counsel did not call the state prosecutors or otherwise attempt to introduce the state-court testimony hardly shows substandard performance.   *See id.* at 323 (counsel's decision as to whether to call witnesses – even if exculpatory – ordinarily not viewed as lapse in professional representation); *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (*per curiam*) ("The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess."); *U. S. ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974) ("[T]he decision to call or bypass particular witnesses is peculiarly a question of trial strategy, which courts will practically never second-guess.").   Moreover, without a basis for admissibility or any reason to believe the testimony would have affected the outcome, Plaintiff cannot show prejudice.

III.    *Lora* Decision

Finally, Petitioner contends that *Lora v. United States*, 599 U.S. 453 (2023), which held that the provision in § 924(c) requiring consecutive sentences does not apply to sentences imposed under § 924(j), requires resentencing on his conviction on Count 32.   The Government concedes that the sentence on that § 924(j) count need not have been run consecutively in light of *Lora*, but argues that under the concurrent sentencing doctrine, resentencing is not required because Petitioner's extant life sentences mean that the sentence on Count 32 has no practical effect.   I agree.

In *Kassir v. United States*, 3 F.4th 556 (2d Cir. 2021), the Second Circuit explained that the concurrent sentence doctrine, a "discretionary doctrine rooted in judicial convenience," *id.* at 568, "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences since a ruling in the defendant's favor would not reduce the time he is required to serve or otherwise prejudice him in any way," *id.* at 561.  It "conserves judicial resources when, regardless of the outcome, the prisoner will remain in jail for the same length of time."  *Al - 'Owhali v. United States*, 36 F.4th 461, 466 (2d Cir. 2022).  It applies "in the context of a defendant's collateral attack on a conviction," *Kassir*, 3 F.4th at 564, and even on "direct appeals where a defendant challenges only the length of one concurrent sentence, rather than the legality of a conviction underlying that sentence," *id.* at 562.  "[F]ive factors – the unreviewed conviction's effect on the petitioner's eligibility for parole, the future application of recidivist statutes for a future offense by the petitioner, the petitioner's credibility in future trials, the possibility of pardon, and societal stigma of a conviction – provide helpful guideposts for discerning the impact of a decision to leave a conviction unreviewed."  *Id.* at 568.

The doctrine applies even if the challenged sentence is not concurrent to another sentence but rather, as here, consecutive to a life sentence.  As the Circuit explained in *Al - 'Owhali*, 36 F.4th at 463, "a court may exercise its discretion under the concurrent sentence doctrine to decline to review the merits of a claim on collateral review when the challenged conviction's sentence runs consecutively to one or more unchallenged life sentences."  That discretion exists because in that situation, "(1) the collateral challenge will have no effect on the time the prisoner must remain in custody and (2) the unreviewed conviction will not yield additional adverse collateral consequences."  *Id.* at 467.

The five factors all militate against considering the *Lora* claim.

10

> In this case, there is no meaningful possibility that the unreviewed conviction will
> subject [Petitioner] to a substantial risk of adverse collateral consequences.   First,
> the unreviewed conviction will have no effect on [Petitioner's] future parole
> eligibility because his unchallenged life sentences are all without parole.   Second,
> it is unlikely that [Petitioner] will be subject to a recidivist statute for a future
> offense, such that the unreviewed conviction could result in an increased sentence,
> because [Petitioner] is already in prison for life.   Third, the unreviewed conviction
> is unlikely to be used to impeach his character at a future trial or affect his chances
> for a potential pardon because he remains convicted on [several] other counts for
> his role in the [violence and drug dealing of the Newburgh Latin Kings].   Fourth,
> the unreviewed conviction is unlikely to subject [Petitioner] to a societal stigma,
> especially in comparison to the stigma already carried by his unchallenged
> convictions for [murder and other acts of violence].

*Id.* at 468; *see Kassir,* 3 F.4th at 568.   Indeed, because Petitioner attacks only the sentence, not

the underlying conviction, the risk of adverse collateral consequences is vanishingly small.   *See*

*Kassir*, 3 F.4th. at 562.

Because Petitioner "challenges a sentence to run consecutively to an unchallenged life

sentence, even a complete vacatur of the challenged sentence will not reduce the time he is

required to serve in prison," and thus "[w]hether the challenged sentence runs consecutively or

concurrently to the unchallenged life sentence[s] is a distinction without a difference."   *Al -*

*'Owhali*, 36 F.4th at 467.   "[E]ntertaining [his] challenge" – and the resulting re-sentencing if he

were to prevail[8] – "would result in the expenditure of the court and parties' time and resources,

with no possibility for any cognizable change for [him] even if his challenge were successful."

*Id.*   In short, vacating the sentence on the § 924(j) count and resentencing Petitioner would gain

him nothing and needlessly consume resources.   Accordingly, the Court in its discretion declines

to review the § 924(j) sentence.

But that ruling is "without prejudice to [Petitioner] renewing the claim if he is authorized

to challenge the validity of his life sentences in the future."   *Id.* at 469; *see Kassir*, 3 F.4th at 569

---

[8] One court has held that *Lora* does not apply retroactively on collateral review.   *See Polk v. United States*, No. 17-CR-7, 2024 WL 3744382, at *2 (S.D. Tex. Aug. 8, 2024).

(in recognition of unlikely possibility that new law or evidence invalidated petitioner's life sentences, sentence affirmed without prejudice to renewal "if and when [petitioner] brings a timely and colorable challenge to both of his concurrent life sentences").

Conclusion

For the reasons stated above, the Petition is denied.   As Petitioner makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.   *See* 28 U.S.C. § 2253; *Mathews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).   The Clerk of Court shall docket this Order in No. 24-CV-4095, close No. 24-CV-4095, and send a copy of this Order to Wilson Pagan, No. 883456-054, USP Lee, U.S. Penitentiary. P.O. Box 305, Jonesville, VA 24263.

SO ORDERED.

Dated: March 17, 2025
         White Plains, New York


_____
CATHY SEIBEL, U.S.D.J.