UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------x
WILSON PAGAN,

Petitioner,

-against-

UNITED STATES OF AMERICA,

Respondent.
---------------------------------------------------x

ORDER

10-CR-392-1 (CS)
24-CV-4095 (CS)

Appearances:

Wilson Pagan
Bruceton Mills, West Virginia
*Petitioner* Pro Se

Michael Maimin
Assistant United States Attorney
New York, New York
*Attorney for the United States*

Seibel, J.

Before the Court is Petitioner Wilson Pagan's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(1), (ECF No. 1380 (the "Motion")), the Government's opposition thereto, (ECF No. 1387), and Petitioner's reply, (ECF No. 1391 (the "Reply")). Petitioner seeks reconsideration of my March 17, 2025 Order (the "Order") denying his petition under 28 U.S.C. § 2255. *Pagan v. United States*, No. 10-CR-392, 2025 WL 835867 (S.D.N.Y. Mar. 17, 2025).

## I. Background

The Court assumes the parties' familiarity with the record in and procedural history of the underlying criminal case, as well as the § 2255 litigation and the standards governing such petitions, and sets forth only those facts relevant to its decision.

In 2013 Petitioner was convicted after trial of multiple counts of racketeering, violent crimes (including murder) in aid of racketeering, and firearms offenses in connection with his leadership of the Newburgh Latin Kings. (*See* Minute Entry dated Mar. 4, 2013.) On November 26, 2013, he was sentenced principally to life imprisonment plus 85 years. (ECF No. 814.) On appeal, Petitioner argued, among other things, that the jury was erroneously instructed that it could find him guilty of violent crime in aid of racketeering ("VICAR") offenses based on a *Pinkerton* theory – that is, based on the foreseeable acts of conspirators in furtherance of the conspiracy. *See Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946). His theory was that the predicate violent crimes were state crimes, and New York law does not recognize *Pinkerton* liability. The Second Circuit held that that claim was "foreclosed" by *United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999), which "remains controlling authority," and thus that the *Pinkerton* instruction was not plain error. *See United States v. Sanchez*, 623 F. App'x 35, 38-39 (2d Cir. 2015).[1]

In 2017 Petitioner filed his first § 2255 petition. (ECF No. 1019.) I rejected his claims of ineffective assistance of counsel ("IAC"), (ECF No. 1080), and following the Supreme Court's decision in *United States v. Davis*, 558 U.S. 445 (2019), vacated two of Petitioner's convictions under 18 U.S.C. § 924(c) but upheld his conviction under 18 U.S.C. § 924(j), (ECF No. 1289). That resulted in the sentence of imprisonment being reduced, via an amended

[1] *Diaz* held that the district court was not required to look to Connecticut law of co-conspirator liability to determine the propriety of instructing on *Pinkerton* in relation to a VICAR count based on state-law murder, because "the racketeering statutes are not meant to incorporate state procedural and evidentiary law; rather, references to state law in these statutes merely serve a definitional purpose, that is, to identify generally the kind of conduct made illegal by the federal statute." 176 F.3d at 100. (Unless otherwise indicated, all case quotations omit internal citations, quotation marks, footnotes and alterations. The Court will send Petitioner copies of any unpublished decisions cited in this order.)

judgment, from life-plus-85-years to life-plus-35-years. (ECF Nos. 1292, 1295.) The Second Circuit denied a certificate of appealability. (ECF No. 1320.)

Petitioner then filed a second § 2255 petition, (ECF No. 1344 (the "Petition")), which was not considered a second or successive petition because it was his first petition following the amended judgment, *see Marmolejos v. United States*, 789 F.3d 66, 70 (2d Cir 2015) (citing *Magwood v. Patterson*, 561 U.S. 320, 323-34 (2010)). He again alleged that his trial counsel was ineffective, this time citing, among other things, failing to object to the *Pinkerton* instruction in connection with the VICAR counts. I found that Petitioner had not met the first prong of the IAC test set out in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), because counsel's performance was not substandard:

> Here the instruction to which counsel did not object was based on a case that "remains controlling authority." *United States v. Osborne*, 739 F. App'x 11, 16 (2d Cir. 2018) (noting "*Diaz*'s broad language and continued applicability" despite concerns about its viability); *Sanchez*, 623 F. App'x at 39 (despite concerns, Second Circuit "has not expressly disavowed *Diaz*'s broad language, much less reversed its holding"). "[C]ounsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained clear and previously identified errors." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001). It is hard to see how an instruction based on authority that "remains controlling" can amount to a "clear and previously identified error." That "counsel did not object to a charge that was legally correct . . . does not fall below the objective standard of reasonableness as is required to prove that his counsel was constitutionally ineffective." *Naranjo v. United States*, No. 13-CR-351, 2019 WL 7568186, at *6 (S.D.N.Y. Dec. 16, 2019), *report and recommendation adopted*, 2020 WL 174072 (S.D.N.Y. Jan. 13, 2020).

*Pagan*, 2025 WL 835867, at *3. I further found that even if *Diaz* had been overruled, counsel could not have been expected to forecast such a ruling:

> Even if *Diaz* had been overruled by the Second Circuit subsequent to trial, counsel's failure to predict that action would not amount to substandard performance. "[A]n attorney is not required to forecast changes or advances in the law in order to provide effective assistance. Rather counsel's performance

> must be assessed as of the time of counsel's conduct without the benefit of hindsight." *McCoy v. United States*, 707 F.3d 184, 188 (2d Cir. 2013); *see United States v. De La Pava*, 268 F.3d 157, 166 (2d Cir. 2001) (attorney not ineffective for failing to make motion where no circuit had held such a motion to be valid); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require counsel to forecast changes or advances in the law."); *Pena v. United States*, No. 00-CR-36, 2005 WL 1176073, at *6 (S.D.N.Y. May 18, 2005) ("[C]ounsel is not ineffective for failing to forecast a change in the law.") (collecting cases), *aff'd*, 534 F.3d 92 (2d Cir. 2008). "Legal forecasting is not required of defense counsel because '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Hancock v. United States*, No. 14-CV-1751, 2019 WL 418093, at *9 (D. Conn. Feb. 1, 2019) (quoting *Strickland*, 466 U.S.at 688). Given that *Diaz* has not been overruled to date, the argument for substandard performance is even less viable.

*Pagan*, 2025 WL 835867, at *4. Finally, I found that Petitioner had not met the second prong of the IAC test:

> Nor has Petitioner shown prejudice. He makes no effort to demonstrate a reasonable probability of acquittal absent the *Pinkerton* instruction. In light of the substantial evidence that the violence of which he was convicted was authorized and even ordered by him, (*see United States v. Sanchez*, No. 13-3979, ECF No. 171 at 3-11 (Second Circuit Apr. 13, 2015)), as opposed to merely foreseeable, he cannot make the required showing under the second prong of the *Strickland* test. In short, "[e]ven assuming that his counsel's non-objection was an unprofessional error, [Petitioner] has not demonstrated that it so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Naranjo*, 2019 WL 7568186, at *7.

*Id.* In sum, because a failure to object to a jury instruction is substandard performance only where the instruction contained clearly and previously identified error, and no such error had been identified with respect to the *Pinkerton* instruction – indeed, to the contrary, the case upholding such an instruction was still "controlling" – Plaintiff had not shown that "counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms," *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland*, 466 U.S. at 687-96), and because he had not argued, let alone shown, likelihood of

acquittal absent the instruction, he had not shown "that but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* (same). Petitioner did not appeal the denial of the Petition.

Petitioner now moves under Rule 60(b)(1), which permits the Court to relieve a party from a final order or judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).[2] He claims that the March 17, 2025 Order contains mistakes in that: (1) *Pinkerton* liability conflicts with New York law and I overlooked that cases after *Diaz* have narrowed it; (2) the failure to object was prejudicial because the evidence of the VICAR predicates was insufficient under New York law; (3) I found that the evidence against him was "substantial" when at trial I had said it was "thin;" and (4) the Clerk of Court failed to file two pages of Petitioner's brief and mislabeled his opening brief as a reply brief. (Motion at 4-9.)

II. Timeliness

Motions under Rule 60(b)(1) "must be made within a reasonable time" and "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). Petitioner meets the latter requirement but not the former. "The Second Circuit's view is that, if a court has made a mistake of law or fact, it may make good sense to permit the court to correct such error and thereby avert the need for an appeal . . . ." *In re Old Carco LLC*, 423 B.R. 40, 46 (Bankr. S.D.N.Y. 2010), *aff'd,* No. 10-CV-2493, 2010 WL 3566908 (S.D.N.Y. Sept. 14, 2010), *aff'd sub nom. Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011)

[2] To the extent Petitioner intends to move for reconsideration under Local Rule 6.3 or Federal Rule of Civil Procedure 59, any such motion would be untimely, as the former must be filed with 14 days, *see* S.D.N.Y. LR 6.3, and the latter must be filed within 28 days, *see* Fed. R. Civ. P. 59(e). The motion here was filed on March 2, 2026, almost a year after the Order was entered on March 17, 2025.

(summary order). But "[t]o prevent Rule 60(b)(1) from being used to circumvent the time limitations for an appeal, the Second Circuit has determined that when a 60(b)(1) motion concerns a court's own substantive error, such motion 'may not be made after the time for appeal has elapsed.'" *Id.* (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 670 (2d Cir. 1977)). Thus, the "well-settled law in the Second Circuit is that, while a mistake of law or fact by the trial court may be addressed by a motion brought under Rule 60(b)(1), the failure to file such a motion before passage of the deadline to appeal is fatal." *In re Rochester Drug Coop., Inc.*, No. 20-20230, 2020 WL 6265066, at *2 (Bankr. W.D.N.Y. Oct. 23, 2020), *appeal dismissed sub nom. Nelroy Drugs, Inc. v. Rochester Drug Coop., Inc.*, No. 20-CV-06946, 2021 WL 1534730 (W.D.N.Y. Apr. 19, 2021); *see Leonard v. Lowe's Home Ctrs., Inc.*, 83 F. App'x 402, 403 (2d Cir. 2003) (summary order) ("A Rule 60(b)(1) motion based on judicial mistake of law must be filed within the time that would be permitted for an appeal of the judgment being challenged.").

The Motion was filed almost a year after the Order, but a notice of appeal would have had to have been filed within 60 days. *See* Fed. R. App. Proc. 4(a)(1)(B)(i). The Motion is thus untimely. Moreover, even if it were not an end-run around the time to appeal, the time Petitioner took to file the motion was not reasonable. He had been aware of the VICAR-related *Pinkerton* issue for years, as it was raised on his direct appeal. And he was aware of the issues with his brief, and indeed indicated his intention to file a Rule 60 motion to address them, back in May 2025. (ECF No. 1363.) But because Petitioner is incarcerated and *pro se*, I address the merits in an excess of caution.

III. Merits

Petitioner first contends that his counsel was ineffective for failing to object to the *Pinkerton* instruction, which he contends was given in error. The latter part of that argument – that the instruction was error – is foreclosed, both by *Diaz* and by the Second Circuit's decision in this case. It is true that the Circuit was reviewing the giving of the instruction under the plain error standard, *see Sanchez*, 623 F. App'x at 38, but its language leaves little doubt on the subject. It stated that Pagan's argument "that the Pinkerton instruction was error because the violent crimes underlying the § 1959(a) charges were state offenses, and New York law rejects Pinkerton liability. . . . is foreclosed by *United States v. Diaz*, 176 F.3d 52 (2d Cir.1999)." *Id.* It went on to explain that it had not "expressly disavowed Diaz's broad language, much less reversed its holding," and that it "remains controlling authority." *Id.* at 39. It reiterated those principles three years later in *Osborne. See* 739 F. App'x at 16. Despite Petitioner's disagreement with *Diaz*, and some courts questioning it, *see Sanchez*, 623 F. App'x at 39, it has not been overruled. The cases on which Petitioner relies to argue that it has been narrowed, (*see* Motion at 4-7; Reply at 3-4, 6-7), do not address the issue here – whether a VICAR predicate must incorporate state law of co-conspirator liability.[3] The only case to squarely address that

[3] *United States v. Berry*, No. 22-32-07, 2024 WL 2232465 (2d Cir. May 17, 2024) (summary order), addressed New York's abandoned common law rule that a homicide was not murder unless the victim died within a year and a day (and found counsel not ineffective for failing to raise an argument "foreclose[d]" by Second Circuit precedent). *Moore v. United States*, No. 16-3715, 2021 WL 5264270 (2d Cir. Nov. 12, 2021) (summary order), addressed whether New York intentional murder constituted a crime of violence under 18 U.S.C. § 924(c). *United States v. Mapp*, 170 F.3d 328 (2d Cir. 1999), which addressed unintentional killings, is consistent with *Diaz* in holding that the VICAR statute, 18 U.S.C. § 1959, looks to state law for the definition of the predicate act, and could not have "narrowed" *Diaz* because it was decided earlier. *United States v. Carrillo*, 229 F.3d 177, 182, 183-86 (2d Cir. 2000), criticized *Diaz*'s analysis regarding the state-law overt-act element, not its discussion of *Pinkerton*. The discussion in *United States v. Delgado*, 972 F.3d 63, 73 n.8 (2d Cir. 2020), *as amended* (Sept. 1, 2020), on which Petitioner relies in his reply brief, relates to accomplice liability, not

issue – *Diaz* – said no. Thus, on the issue relevant here, *Diaz* has not been narrowed. It remains "controlling" and dictates "that 'the racketeering statutes are not meant to incorporate state procedural and evidentiary law; rather, references to state law in these statutes serve merely a definitional purpose, that is, to identify generally the kind of conduct made illegal by the federal statute.'" *Sanchez*, 623 F. App'x at 39 (quoting *Diaz*, 176 F.3d at 100).

Accordingly, the only question is whether Petitioner's counsel was nevertheless ineffective for failing to object to the *Pinkerton* instruction. I adhere to my earlier ruling on that subject for the same reasons. *See Pagan*, 2025 WL 835867, at *3-4. An attorney cannot be ineffective for failing to object to an instruction that has never been identified as erroneous, *Aparicio*, 269 F.3d at 99; *see Holmes v. Brown*, No. 10-CV-3592, 2013 WL 6408496, at *11 (E.D.N.Y. Dec. 6, 2013) ("[T]he failure to object to [a] not-clearly-erroneous . . . charge cannot plausibly render trial counsel's performance deficient."), an issue Petitioner does not address. Further, lawyers are not expected to predict the future and cannot be held deficient for failing to raise an issue no court had found valid, let alone one expressly foreclosed by controlling precedent, *see McCoy*, 707 F.3d at 188; *De La Pava*, 268 F.3d at 166; *Pena*, 2005 WL 1176073,

---

co-conspirator liability, and is found in a footnote that does not mention, let alone purport to overrule, *Diaz*. Petitioner argues that these cases show that VICAR incorporates state substantive law regarding predicate offenses, but *Diaz* shows the same. It acknowledges that state law generally defines the kind of conduct that violates the federal statute, *see* 176 F.3d at 100, and just explains that "state procedural and evidentiary law" – such as the law of co-conspirator liability – is not part of that analysis, *id.*, and thus whether a *Pinkerton* instruction is proper is not determined by state law. In short, to whatever extent these cases might suggest that *Diaz* is on shaky ground, they are not about *Pinkerton*, do not purport to overrule *Diaz*, and, as Panel opinions, could not overrule *Diaz* absent intervening *en banc* or Supreme Court authority. *See, e.g., Buller v. Comm'r of Internal Revenue*, 160 F. 4th 266, 268 (2d Cir. 2025); *see also Tanasi v. New All. Bank*, 786 F.3d 195, 200 n.6 (2d Cir. 2015) ("Where a second panel's decision seems to contradict the first, and there is no basis to distinguish the two cases, we have no choice but to follow the rule announced by the first panel.").

at *6, another issue Petitioner does not address.[4] He simply has not shown deficient performance.

Petitioner takes issue with my ruling that he made no effort to show, and had not shown, prejudice from the failure to object to the *Pinkerton* instruction, arguing that (1) the evidence would have been insufficient under New York law, which does not recognize *Pinkerton* liability and does not allow the hearsay and inferences on which the Government relied; and (2) the Court previously found the evidence "thin," not "substantial" enough to show that the *Pinkerton* charge caused no prejudice. As to the former point, as explained above, it is federal, not state, law that governs co-conspirator liability, and likewise it is federal, not state, law of evidence that controls.[5] Moreover, as the Order noted, *see Pagan*, 2025 WL 835867, at *4 & n.7, there was substantial evidence that Petitioner, as "First Crown" of the Newburgh Latin Kings, authorized and ordered the violent crimes, and that they were not merely foreseeable to him, *see* Brief for

---

[4] Even if some cases might arguably foreshadow that *Diaz* might in the future be overruled on the issue relevant here, that would not raise the failure to object to the level of deficient performance. *See Elion v. United States*, 155 F.4th 889, 902 (7th Cir. 2025) (because attorney is constitutionally ineffective only if his errors are so serious that he no longer functions as counsel, and because he is not expected to anticipate changes in the law, the "narrow and rare[]" exception where an attorney is deficient for failing to raise an argument even where it has not previously been found valid applies only if the "'foreshadowed' argument is one that no reasonable attorney could fail to foresee"); *Kimbrough v. United States*, 71 F.4th 468, 471-72 (6th Cir. 2023) ("Because the Sixth Amendment protects against only the most egregious of omissions, precedent will clearly foreshadow a change in law in rare circumstances. The change must be so obvious that no reasonable jurist or attorney could fail to foresee it.").

[5] In addition, Petitioner never raised the argument about New York evidence law in the Petition, so the Court could not have overlooked it. *See, e.g.*, *Munn v. APF Mgmt. Co., LLC*, No. 19-CV-10791, 2021 WL 2355308, at *3 (S.D.N.Y. June 9, 2021) (denying Rule 60(b)(1) motion where plaintiff raised argument not before court in underlying motion, meaning court could not have overlooked it); *Isabella v. Podlofsky*, No. 08-CV-1510, 2010 WL 11632635, at *4 (E.D.N.Y. Jan. 26, 2010) (Rule 60(b)(1) does not "provide a movant an additional opportunity to make arguments").

the United States of America at 3-11, 19-22, *Sanchez*, 623 F. App'x 35 (No. 13-3979), 2015 WL 1754384, ECF No. 171.

Petitioner contends that the evidence was not substantial based on my comment – "'it's thin,'" (Motion at 9 (quoting Trial Transcript ("Tr.") at 3468)) – during a portion of the argument at trial pursuant to Federal Rule of Civil Procedure 29. Petitioner overlooks the context. I indeed said one aspect of the evidence was "thin," but in the context of ruling that it was nevertheless sufficient for the jury to find beyond a reasonable doubt, apart from *Pinkerton*, that Defendant ordered the shooting in question. (*See* Tr. at 3464-69.) The Court of Appeals agreed. *See Sanchez*, 623 F. App'x at 41. Evidence sufficient to surmount the highest burden of proof known to the law cannot fairly be described as insubstantial. Moreover, the Government had more evidence than just the aspect on which I commented, *see* Brief for the United States of America at 3-11, 19-22, 37, *Sanchez*, 623 F. App'x 35 (No. 13-3979), 2015 WL 1754384, ECF No. 171, and my statement in the Order referred to the evidence as a whole. Further, the fact remains that Petitioner had, as part of his original Petition, made no effort to show a reasonable probability that he would have been acquitted absent the *Pinkerton* instruction, and he still has not done so here. He thus has not shown either prejudice or substandard performance.[6]

---

[6] Petitioner suggests that the Court erred in noting, as part of its discussion as to why counsel were not ineffective for not calling state prosecutors to testify as to testimony given in state court, that Petitioner had "posit[ed] no exception to the hearsay rule that would have applied." *Pagan*, 2025 WL 835867, at *4. Not only was that not the only ground on which I found no substandard performance, but it was an entirely true statement. In an unauthorized attempt to cure that deficiency, *see, e.g., Horn v. Medical Marijuana, Inc.*, No. 15-CV-701, 2020 WL 7121793, at *1 (W.D.N.Y. Sept. 17, 2020) (Rule 60(b)(1) is not a vehicle for pressing new theories not raised in underlying motion or for taking second bite at the apple), Petitioner now suggests, for the first time, that *United States v. Jackson*, 335 F.3d 170 (2d Cir. 2003), supplies authority for the admission of the state-court testimony, (*see* Motion at 8). But not only did *Jackson* affirm the *exclusion* of the out-of-court testimony, *see Jackson*, 335 F.3d at 176-79, but

Finally, to the extent the relevant "mistake" is alleged to relate to his brief, Petitioner has not shown any effect on the outcome of his Petition. It is true that after he filed the Petition on May 21, 2024, (ECF No. 1344), he separately filed a memorandum of law on June 10, 2024, (ECF No. 1349), and that the Clerk, perhaps confused by the time lag, labeled the latter a "reply memorandum of law," (*id.*). But the Court considered both it and his actual reply, (ECF No. 1360), *see Pagan*, 2025 WL 835867, at *1, and Petitioner does not suggest any imaginable prejudice from the Clerk's mistake.[7]

Nor does Rule 60 justify relief based on Petitioner's accusation that the Clerk omitted two pages from his brief. (Motion at 8; Reply at 2, 8). First, there is no reason to believe that the Clerk omitted anything. If something was left out, it appears to have been by Petitioner, as his retained copy of his brief, which he attached to a subsequent filing, (ECF 1360 at 13-19), is identical to the filed copy, (ECF No. 1349). Moreover, although Petitioner now argues the materiality of the supposedly omitted pages by claiming that they contained his discussion of prejudice from the *Pinkerton* instruction, (Motion at 8; Reply at 2, 8), it is apparent that Petitioner's (non-substantive) reference to that issue appears on page 5 of the brief, after which Petitioner turned to other issues, (*see* ECF No. 1349). It is simply not credible either that the Clerk omitted anything or that any pages Petitioner may have omitted related to the *Pinkerton* issue. Moreover, even now Petitioner does not say what those purportedly missing pages might have said that would have had any effect on my decision on the Petition.

---

Petitioner makes no effort to explain how the testimony he criticizes counsel for not offering would fit under any of the theories considered in that case.

[7] The Government overlooked the first brief, *see Pagan*, 2025 WL 835867, at *3 n.5, which could only have redounded to Petitioner's benefit. Likewise, that I erroneously believed that Petitioner's appeal from the amended judgment was pending, and therefore gave him the

For the reasons stated above, the motion is denied. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to (1) terminate ECF No. 1380 in No. 10-CR-392 and ECF No. 17 in No. 24-CV-4095, and (2) send a copy of this Order to Petitioner Wilson Pagan, No. 88356-054, USP Hazelton, U.S. Penitentiary, P.O. Box 2000, Bruceton Mills, WV 26525.

**SO ORDERED.**

Dated: September 29, 2026
White Plains, New York

Cathy Seibel

CATHY SEIBEL, U.S.D.J.

---

opportunity to consider whether he wanted to pursue the Petition simultaneously, *see* ECF Nos. 1345-46, could not have harmed him in any way.